**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KYLE FREDERICK HAINES, Individually | § | |
| and as Representative of the Estate of | § | |
| Robert Arthur Haines, and KIRBY HAINES | § | |
| | § | |
| | § | |
| VS. | § | C. A. NO. _____ |
| | § | |
| THE UNITED STATES and | § | |
| THE HARRIS COUNTY FLOOD | § | |
| CONTROL DISTRICT | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs, Kyle Frederick Haines, Individually and Representative of the Estate of Robert Arthur Haines ("the Decedent"), and Kirby Haines, complain of Defendants, the United States Army Corps of Engineers ("the Corps") and the Harris County Flood Control District ("HCFCD"), as well as their agents and employees, and for cause of action would respectfully show unto the Court the following:

**I.      INTRODUCTION**

1.      Plaintiffs bring this action as a result of Constitutional violations and state law personal injuries which caused the wrongful death of Robert Arthur Haines, age 71.  Plaintiffs seek compensatory damages under 42 U.S. § 1983 and 1988, because Defendants deprived the Decedent of his federally-protected right to life as guaranteed by the Fourteenth Amendment.

2.      The Corps built the Addicks and Barker reservoirs west of Houston seventy years ago for the purpose of protecting the center of the city from catastrophic flooding.  After Hurricane Harvey made landfall in Houston, Texas, on August 25, 2017, rain pummeled the greater Houston area for days, filling the reservoirs to the brim.

3.      In response, the employees of the Corps and the HCFCD deliberately began releasing water from both reservoir systems on August 28, 2017 out of fear that water would spill over and cause uncontrolled damage to downtown Houston.

4.      The controlled releases sent water surging into neighborhoods in West Houston along Buffalo Bayou, including Thornwood, where the Decedent lived with Plaintiff Kyle Frederick Haines.   The water inundated the home of the Decedent, causing him to drown.

5.      The death of Robert Arthur Haines occurred as a direct result of the policies, procedures and practices of the Corps and of the HCFCD, as well as their employees and agents who were acting under the color of state law.   Defendants' actions deprived the decedent of his constitutional right to life, as guaranteed by the Fourteenth Amendment to the United States Constitution.

## II.     PARTIES

6.      Plaintiff Kyle Frederick Haines, Individually and as the Personal Representative of the Estate of Robert Arthur Haines, was the spouse of the Decedent Robert Arthur Haines.   At all relevant times, he was a resident of Houston, Harris County, Texas.

7.      Plaintiff Kirby Haines is the son of the Decedent Robert Arthur Haines.   At all relevant times, he was a resident of Houston, Harris County, Texas.

8.      Defendant United States of America, including the U.S. Army Corps of Engineers, and any federal, state or local agency working under the auspices of the federal government, may be served through the National Courts Section, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. 20530.

9.     Defendant Harris County Flood Control District, and its actors and/or employees, may be served through its Executive Director, Russell A. Poppe, at 9900 Southwest Freeway, Houston, Texas, 77092.

### III.    JURISDICTION AND VENUE

10.    This case is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Jurisdiction over Plaintiffs' Texas wrongful death and survival claims is further granted through 42 U.S.C. §1988.

11.    This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct that caused the death of Robert Arthur Haines, which occurred in Houston, Harris County, Texas, within the Southern District of Texas.

12.    Venue of this cause is proper in the Southern District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Houston, Texas, which is within the Southern District of Texas.

### IV.    FACTUAL BACKGROUND

13.    Robert Arthur Haines, the Decedent, resided at 754 Langwood Drive in Houston, Harris County, Texas 77079.

14.    The Decedent was inside his home on August 25, 2017, when Hurricane Harvey ("Harvey"), made landfall on the Texas Gulf Coast, bringing torrential rain which resulted in extensive flooding to the greater Houston area.

15.    Over a four-day period, parts of Southeast Texas (including Houston) received over forty inches of rain and experienced catastrophic flooding that submerged thousands of homes.  However, despite Harvey's magnitude, Decedent's home did not experience flooding

during this time. A few inches of water initially entered Decedent's home, but this water had begun to recede by August 28, 2017, the Sunday after Hurricane Harvey made landfall.

16.     On that day, at some point between midnight and 2:00 a.m., the Corps, in conjunction with the HCFCD, began releasing water from the Addicks and Barker reservoir systems and announced that thousands of properties would certainly experience flooding as a result of the release.  Of course, in light of the time of the release of water, this "notice" was of no use.

17.     The Addicks and Barker reservoirs are part of a flood control system on the west side of Houston, Texas.  The reservoirs' dams are owned and operated by the Corps and were designed specifically to protect downtown Houston from catastrophic flooding.  The dams protect Houston from floods by controlling the flow of water into the Buffalo Bayou, which is the largest waterway running through the city of Houston. The reservoirs function as "dry reservoirs," meaning the dams stay open and water is allowed to flow freely until the area receives heavy rainfall.  Once the dam systems' flood gauges reach certain levels, the dams' floodgates close and they begin to fill to prevent the flow of uncontrollable water into Buffalo Bayou.  When Harvey arrived in the Houston area, the Addicks and Barker reservoirs and dam systems were in the middle of a $75 million renovation.

18.     Defendants knew that their decision would cause flooding to neighborhoods along and near the Buffalo Bayou, which included Decedent's home.  Over five feet of water entered Plaintiff's home shortly after the release of the Addicks and Barker dams. The incoming water continued to rise throughout the night and over the course of the next several days.

19.     When Plaintiff Kyle Haines, Decedent's husband, tried to return home on August 30, he was thwarted from doing so, due to the high floodwaters.  He reported his husband

missing to the Harris County Police Department, who found his husband's body inside the home on September 3, 2017.

20.    Haines' death certificate lists his Actual or Presumed Date of Death as "Found September 3, 2017" and "Submerged in flooded residence (Tropical Storm Harvey)". Decedent's official cause of death was by drowning.

## V.    CAUSE OF ACTION 1: §1983 MONELL CLAIM AGAINST DEFENDANTS UNDER FEDERAL LAW

21.    Plaintiffs incorporate by reference all of the foregoing and further allege as follows:

22.    The acts of Defendants in intentionally flooding Decedent Robert Haines' home were conducted pursuant to the policies and procedures regarding reservoir control.  As a direct result of the policies, practices, customs and procedures of the Defendants, Decedent Robert Haines was intentionally deprived of his constitutional right of life guaranteed to him by the Fourteenth Amendment to the United States Constitution.  Decedent Robert Haines would not have drowned in his flooded home in West Houston, but for the actions of the Defendants.

23.    Defendants' policies and procedures for establishing the reservoir systems, for releasing water at times of flooding, and their decision to release the water was actually known, constructively known and/or ratified by the Defendants and their policymakers and was promulgated with deliberate indifference to the Decedent's Fourth and Fourteenth Amendment rights under the United States Constitution.  Moreover, the known and obvious consequence of these policies was that Defendants' employees would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.   Consequently, the policies delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages.

24.     The Fourteenth Amendment of the Constitution of the United States, Section 1, provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment ensures that a State must not deprive a person of life, and, if such a deprivation occurs, a private right of action exists for the individual.

25.     The death of Robert Arthur Haines occurred as a direct result of the policies, procedures and practices of the Corps and of the HCFCD, as well as their employees and agents who were acting under the color of state law.   Defendants' actions deprived the decedent of his constitutional right to life, as guaranteed by the Fourteenth Amendment to the United States Constitution.

## VI.    DAMAGES

26.     Plaintiffs incorporate the previous allegations and further allege as follows:

27.     Plaintiffs assert claims under 42 U.S.C. §1983 and the Texas wrongful death and survivorship statutes.

28.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered various injuries and damages.

29.     Plaintiff Kyle Frederick Haines, in his capacity as heir at law to, and as executor of, the Estate of Robert Arthur Haines, has incurred damages including, but not limited to, the following: physical pain and mental anguish suffered by Robert Arthur Haines before he died; and, funeral and burial expenses.

30.     Plaintiff Kyle Frederick Haines, in his individual capacity asserting wrongful

death claims (as surviving spouse of the Decedent), has incurred damages including, but not

limited to, the following:

a)      Loss of household services sustained in the past;

b)      Loss of household services that, in reasonable probability, Kyle Frederick Haines will sustain in the future;

c)      Loss of consortium sustained in the past;

d)      Loss of consortium that, in reasonably probability, Kyle Frederick Haines will sustain in the future;

e)      Pecuniary Loss sustained in the past;

f)      Pecuniary Loss that, in reasonably probability, Kyle Frederick Haines will sustain in the future;

g)      Loss of companionship and society sustained in the past;

h)      Loss of companionship and society that, in reasonably probability, Kyle Frederick Haines will sustain in the future;

i)      Mental anguish in the past; and

j)      Mental anguish that, in reasonable probability, Kyle Frederick Haines will sustain in the future.

31.     Plaintiff Kirby Haines, in his individual capacity asserting wrongful death claims

(as surviving son of the Decedent), has incurred damages including, but not limited to, the

following:

a)      Loss of Parental Consortium in the past and future, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love;

b)      Mental anguish in the past;

c)      Mental anguish in the future;

d)      Pecuniary Loss sustained in the past;

e)      Pecuniary Loss that, in reasonable probability, he will sustain in the future;

f)      Loss of companionship and society sustained in the past;

g)      Loss of companionship and society that, in reasonable probability, he will sustain in the future; and

h)      Loss of inheritance.

32.     Plaintiffs hereby seek recovery of those elements of damage listed above in an amount within the jurisdictional limits of this Court.

## VII.   <u>JURY DEMAND</u>

33.     Pursuant to Federal Rule of Civil Procedure 48, Plaintiffs hereby request a jury trial.

## <u>PRAYER</u>

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages, jointly and severally, attorneys' fees, including reasonable and necessary expenses such as expert fees, pursuant to 42 U.S.C. § 1988, costs of court; judgment at the highest rate allowable under the law; and all such other and further relief, at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

## THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
    Anthony G. Buzbee
    State Bar No. 24001820
    S.D. Texas ID No. 22679
    Peter K. Taaffe
    State Bar No. 24003029
    S.D. Texas ID No. 22675
    JPMorgan Chase Tower
    600 Travis Street, Suite 7300
    Houston, Texas 77002
    Tel: (713) 223-5393
    Fax: (713) 223-5909
    tbuzbee@txattorneys.com
    ptaaffe@txattorneys.com
    www.txattorneys.com

**ATTORNEYS FOR PLAINTIFFS**