IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KYLE FREDERICK HAINES, individually and as representative of the Estate of Robert Arthur Haines, and KIRBY HAINES, § § § § § § Plaintiffs, § § v. § § THE UNITED STATES and § THE HARRIS COUNTY FLOOD § CONTROL DISTRICT, § § Defendants. § | CIVIL ACTION NO. H-18-104 |

MEMORANDUM AND ORDER

Pending is Defendant Harris County Flood Control District's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Document No. 8). After carefully considering the motion, response, and applicable law, the Court concludes for the following reasons that the motion should be granted.

I. Background

Hurricane Harvey struck Houston in August 2017, causing widespread flooding and filling the Addicks and Barker reservoirs to the brim.[1] Plaintiffs allege that in response, employees of the United States Army Corps of Engineers (the "Corps") and Defendant

---

[1] Document No. 2 ¶ 2 (Pls.' Orig. Compl.).

Harris County Flood Control District ("HCFCD") "deliberately began releasing water from both reservoir systems on August 28, 2017 out of fear that water would spill over and cause uncontrolled damage to downtown Houston."[2] The controlled release flooded neighborhoods along Buffalo Bayou, including Thornwood, where Plaintiff Kyle Frederick Haines lived with his 71-year-old spouse, Robert Arthur Haines.[3]

Until August 28, the Haines's house had experienced only a few inches of flooding, which had begun to recede.[4] Between midnight and 2:00 a.m. on the 28th, "the Corps, in conjunction with the HCFCD, began releasing water from the Addicks and Barker reservoir systems and announced that thousands of properties would certainly experience flooding as a result of the release."[5] Shortly thereafter, more than five feet of water entered the Haines's home, and the water continued to rise throughout the night and over the course of the next several days.[6] Robert Haines was at home, but Plaintiff Kyle Haines was unable to return home because of the flooding.[7] After Kyle Haines reported his spouse missing, the

---

[2] Id. ¶ 3.

[3] Id. ¶¶ 1, 4.

[4] Id. ¶ 15.

[5] Id. ¶ 16.

[6] Id. ¶ 18.

[7] Id. ¶ 19.

police found Robert Haines's body inside their home on September 3.[8] Robert Haines's official cause of death was by drowning.[9]

Kyle Haines, both in his individual capacity and as representative of Robert Haines's estate, together with Robert Haines's son Plaintiff Kirby Haines (together, "Plaintiffs") allege against HCFCD "claims under 42 U.S.C. § 1983 and the Texas wrongful death and survivorship statutes."[10] Specifically, Plaintiffs allege that HCFCD deprived Robert Haines of his life without due process of law in violation of the Fourteenth Amendment.[11] HCFCD moves to dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction under Rule 12(b)(1) and to dismiss Plaintiffs' § 1983 claim for failure to state a claim under Rule 12(b)(6).[12]

## II. Rule 12(b)(1)

HCFCD argues that Plaintiffs' claims under the Texas wrongful death and survivorship statutes are subject to dismissal because

---

[8] Id.

[9] Id. ¶ 20.

[10] Id. ¶ 27. Plaintiffs also alleged claims against the United States of America but later conceded that "as plead, his case cannot proceed against the United States." Document No. 22 at 1. The Court accordingly granted the United States's unopposed motion to dismiss because the United States had not waived its sovereign immunity. Document No. 23.

[11] Document No. 2 ¶¶ 1, 22-24.

[12] Document No. 8.

HCFCD has not waived its governmental immunity under the Texas Tort Claims Act ("TTCA").[13] Plaintiffs do not argue that HCFCD has waived its immunity, but respond that they "are not asserting a claim under the TTCA" such that "this part of HCFCD's motion should not be ruled on by the Court."[14] The implication of this statement may be that Plaintiffs no longer seek recovery on their state law claims. Regardless, Plaintiffs' Original Complaint alleges that "Plaintiffs bring this action as a result of Constitutional violations *and state law personal injuries*" and that "Plaintiffs assert claims under 42 U.S.C. § 1983 *and the Texas wrongful death and survivorship statutes.*"[15] The TTCA "is the only, albeit limited, avenue for common-law recovery against the government," such that all tort theories alleged against a governmental unit are assumed to be under the TTCA. <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 253 S.W.3d 653, 659 (Tex. 2008); *see also* <u>Gone v. Smith</u>, No. 4:16-CV-00684, 2017 WL 978703, at *7 (S.D. Tex. Mar. 14, 2017) ("Governmental units in Texas are presumed immune from suit, unless the Texas Tort Claims Act (TTCA) expressly waives immunity.") (citing <u>Texas Dep't of Parks & Wildlife v. Miranda</u>, 133 S.W.3d 217, 224-25 (Tex. 2004)); <u>County of El Paso v. Dorado</u>, 33 S.W.3d 44, 47 (Tex. App.-El Paso 2000, no pet.) (wrongful death claim); *accord*

---

[13] Document No. 8 at 2-3.

[14] Document No. 13 at 5.

[15] Document No. 2 ¶¶ 1, 27 (emphasis added).

Webb County v. Sandoval, 88 S.W.3d 290 (Tex. App.-San Antonio 2002, no pet.); Mann v. Lopez, 404 F. Supp. 2d 932 (W.D. Tex. 2005). Because Plaintiffs disavow any claim under the TTCA and HCFCD has not waived its governmental immunity, Plaintiffs' state law claims are dismissed for lack of subject matter jurisdiction.

### III. Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. See Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional deprivation. *See* City of Canton v. Harris, 109 S. Ct. 1197, 1203 (1989); Monell v. Dept. of Soc. Servs., 98 S. Ct. 2018, 2037-38 (1978). This requires the execution of an official municipal policy or custom which results in the injury made the basis of the § 1983 claim. Bd. of County Comm'rs v. Brown, 117 S. Ct. 1382, 1388 (1997); Monell, 98 S. Ct. at 2035-36. Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002).

Plaintiffs allege that "the employees of the Corps and the HCFCD deliberately began releasing water from both reservoir systems on August 28, 2017."[16] However, as HCFCD correctly argues, Plaintiffs' Original Complaint fails to identify a policymaker[17] or

---

[16] Document No. 2 ¶ 3.

[17] Plaintiffs argue in their response that they "have alleged and named the official policymakers." Document No. 13 at 2. At the Rule 16 scheduling conference HCFCD represented, and Plaintiffs did not dispute, that the Harris County Commissioners Court is the policymaker for HCFCD. Plaintiffs' complaint does not identify or allege any facts regarding the Commissioners Court, nor does it identify any other individual or group as the policymaker for HCFCD.

an official policy of HCFCD that was the moving force behind the alleged constitutional violation.[18] Plaintiffs conclusorily allege that "[t]he acts of *Defendants* in intentionally flooding Decedent Robert Haines' home were conducted pursuant to the policies and procedures regarding reservoir control," and that "*Defendants'* policies and procedures for establishing the reservoir systems, for releasing water at times of flooding, and their decision to release the water was actually known, constructively known and/or ratified by the *Defendants* and their policymakers."[19] Plaintiffs do not, however, identify any specific policies or procedures of HCFCD pursuant to which the dams were opened and the flooding ensued. *See* Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.") (citing Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992)). Moreover, Plaintiffs concede in their allegations that "[t]he reservoirs' dams are owned and operated by the Corps."[20] Plaintiffs allege no facts to support an inference that HCFCD's policymaker, rather than the Corps, made the decision to open the Corps's dams, nor do they allege that the Corps had authorized HCFCD to operate

---

[18] Document No. 8 at 5-6.

[19] Document No. 2 ¶¶ 22-23 (emphasis added).

[20] Id. ¶ 17.

7

or release water from its dams, much less that HCFCD on its own had adopted a customary practice of releasing water from the dams owned by the Corps.[21] Plaintiffs' conclusory references to unspecified policies and procedures of "Defendants" therefore fail to allege a plausible claim against HCFCD under Monell.

Plaintiffs' reliance on Pembaur v. City of Cincinnati, 106 S. Ct. 1292 (1986), is unavailing. Although that case held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," id. at 1298, such liability still must be based on a decision by the policymakers that represents the municipality's official policy. Because Plaintiffs have not alleged any nonconclusory facts which, taken as true, would establish that the release of water from the Addicks and Barker reservoirs was attributable to a policy or practice of HCFCD's policymaker, Plaintiffs fail to state a claim against HCFCD under § 1983.[22]

---

[21] Plaintiffs in their response rely on a single case for the proposition that "the Harris County Flood Control District . . . regulates and maintains bayous and creeks," Residents Against Flooding v. Reinvestment Zone No. Seventeen, 260 F. Supp. 3d 738, 752 (S.D. Tex. 2017), aff'd, No. 17-20373, 2018 WL 2331791 (5th Cir. May 22, 2018), but cite no legal authority suggesting that HCFCD's jurisdiction to regulate bayous and creeks gives them control of the dams owned and operated by the Corps. Plaintiffs' counsel at the scheduling conference was unaware of any such authority.

[22] Plaintiffs have not sought leave to amend their complaint. Moreover, Plaintiffs' counsel's represented during the scheduling conference that Plaintiffs conducted no investigation before filing suit, that they have no evidence to cast doubt on HCFCD's

IV. Order

It is therefore

ORDERED that Defendant Harris County Flood Control District's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Document No. 8) is GRANTED; Plaintiffs' state law claims against the Harris County Flood Control District under the Texas wrongful death and survivorship statutes are DISMISSED for lack of subject matter jurisdiction; and Plaintiffs' claim under 42 U.S.C. § 1983 is DISMISSED with prejudice on the merits.

A Final Judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 2ND day of July, 2018.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

representation that it was uninvolved in the opening of the dams, and that unverified statements in the media provided the only basis for Plaintiffs' understanding that HCFCD was involved in the decision. Under these circumstances, an amendment would be futile.

9